UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANDREW RABE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:07-CV-00293 SNL |
| | ) |
| NATIONWIDE LOGISTICS, INC., | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM

On or about January 9, 2007, Plaintiff Andrew Rabe filed the instant action in the Circuit Court of the City of Saint Louis, Missouri. Thereafter, Defendant Nationwide Logistics, Inc. (hereinafter "Nationwide") removed the case to the United States District Court for the Eastern District of Missouri, pursuant to U.S.C. §§ 1441(a) &(b), 1446, and 1331.

This matter comes before the Court on Nationwide's motion for summary judgment (Doc. #14, filed Nov. 9, 2007). Upon consideration of the parties' arguments and evidence in support thereof, the Court **HEREBY DENIES** the motion; the analysis found herewith.

### *Legal Standard*

Although summary judgment motions may be viewed as tools of "great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact," *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988); courts have repeatedly recognized the severity of summary judgment as a remedy, to be granted only in cases where the movant establishes his right to judgment with such clarity so as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977); *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976).

After the movant demonstrates the absence of any genuine issue of material fact, *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962); *Mt. Pleasant*, 838 F.2d at 273; the nonmoving party must set forth specific facts which demonstrate sufficient evidence for a

potential jury verdict in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Putnam v. Unity Health Systems, Inc.*, 348 F.3d. 732, 733-34 (8th Cir. 2003) ("... the nonmoving party must 'substantiate his allegations with sufficient probative evidence ∴ based on more than mere speculation, conjecture, or fantasy.' ") (quoting *Wilson v. Int'l Bus. Mach. Corp.*, 62 F.3d. 237, 241 (8th Cir. 1995)); *see also* FED. R. CIV. P. 56(e).

In ruling on a motion for summary judgment, the court should review all facts supported by the record, and any logical inferences arising therefrom, in the light most favorable to the nonmoving party. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). *See also*, *e.g.*, FED. R. CIV. P. 56(e); *Robert Johnson Grain Co.*, 541 F.2d at 210 (conflicts of evidence must be construed in favor of non-movant). In that way, summary judgment should not be granted "unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." *Hindman v. Transkrit Corp.*, 145 F.3d. 986, 990 (8th Cir. 1998); *see also Mayer v. Nextel West Corp.*, 318 F.3d. 803, 806 (8th Cir. 2003) (citing *Keathley v. Ameritech Corp.*, 187 F.3d. 915, 919 (8th Cir. 1999)).

### *Evidentiary Matters*

At the summary judgment stage, "the Court may consider only admissible evidence, and must disregard portions of declarations that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions as fact." *Woods v. Wills*, 400 F.Supp.2d 1145, 1162 (D.Mo. 2005).

### I. **Documents**

In support of its motion, Nationwide offers a host of documents for the Court's consideration. The Court notes that, while a summary judgment motion may be supplemented by affidavits, depositions, and/or answers to interrogatories; where a party makes reference to a document, it must first properly authenticate the same. FED. R. CIV. P. 56(e)(1). Specifically, unless the parties stipulate as to their contents and authenticity, FED. R. EVID. 1007; documents must meet a two-prong test: (1) they must be attached to and authenticated by an affidavit (or a sworn or certified copy must be attached to or served with the affidavit); and (2) the affiant must be a competent witness through whom the documents may be received into evidence at trial. *Stuart v. General Motors Corp.*, 217 F.3d 621, 636 n. 20 (8th Cir. 2000); FED. R. CIV. P. 56(e). *See also* 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 56.14(2)(c) (3d ed. 1997)

("Unauthenticated documents, once challenged, cannot be considered by a court in determining a summary judgment motion."). Therefore, regardless of the documents' essential nature or probative value; without proper foundation, they will not be permitted for summary judgment purposes. *Cordray v. 135-80 Travel Plaza, Inc.*, 356 F.Supp.2d 1011, 1015 (D.Neb. 2005).

At the outset, the Court is troubled with Nationwide's disregard for certifying and/or authenticating its submitted documents, even after such procedural deficiencies were raised by Mr. Rabe during the parties' deposition and in his opposition to the instant motion. Nevertheless, the Court gives practical effect to the record before it and shall consider Nationwide's exhibits where the parties' sworn testimony lends sufficient foundational support thereto.[FN1]

> **FN1**. However, where the record is lacking, and there is simply no way for the Court to know the documents' date of origin, author, and/or purpose; the deficiency becomes more than a matter of form. Namely, Exhibits 4, 8, 14, 15, and 20 (Doc. #16 exs. 7, 12, 18, 19 & 24) were in no way authenticated, and are therefore precluded from the Court's consideration.

Specifically, Exhibits 6, 9, and 22 (Doc. #16 exs. 9, 13 & 26) have been sufficiently authenticated by the parties' testimony, and shall be considered. Similarly, Exhibits 16, 17, 18, 19, and 23 (Doc. #16 exs. 20, 21, 22, 23 & 27) shall be received. In contrast, Exhibits 10, 11, 12, and 21 (Doc. #16, ex. 14, 15, 16 & 25) are excluded from the Court's analysis.[FN2, FN3]

> **FN2**. The record does not establish the authenticity of any of these documents. In fact, the four are similarly situated in that Ms. Baker (Nationwide's human resources manager) testified that; although she did know by whom, or at what point, they were created; she had viewed the documents prior to litigation, when Mr. McGeehan (Mr. Rabe's supervisor) gave them to her to be placed in Mr. Rabe's personnel file. However, this testimony is controverted and fatally undermined by the remainder of the record. To wit, Mr. McGeehan stated that he did not know of any time at which he presented these documents to be filed with Ms. Baker or any other person; and rather, all of Mr. Rabe's files were stored in his office during times relevant here. Mr. McGeehan further testified that, under ordinary circumstances, he would have provided Mr. Rabe with copies of the disputed documents; however, he could not recall creating and/or distributing the documents to any person(s). To that end, Mr. Rabe and Mr. Parks (Nationwide's Chief Financial Officer) both testified that they had never viewed or received these documents prior to the litigation.

> **FN3**. The Court further notes that, under the business records exception to the hearsay rule, a document may be admitted into evidence only if authenticated by the "testimony of the custodian [of the record] or other qualified witness." However, this exception's applicability requires that the business regularly conduct the activity, i.e. create and store the memorandum, FED. R. EVID. 803(6); and the parties' testimony establish the same. (*C.f.* McGeehan Dep.) Even

3

> assuming that the authenticity of these documents had been established, the record
> is replete with allegations undermining the documents' credibility, i.e. the absence
> of any signatures and/or dates. *See Shelton v. Consumer Products Safety Com'n*,
> 277 F.3d 998, 1010 (8th Cir. 2002) (Although the party opposing admissibility
> bears the burden to so establish, the business records exception may not apply
> where problems of untrustworthiness appear, i.e. "the source of information or the
> method or circumstances of preparation indicate lack of trustworthiness.")
> (quoting FED. R. EVID. 803(6)).

As a final matter, in his opposition to Nationwide's instant motion, Mr. Rabe offers a copy of a "Job Performance Appraisal," dated January 27, 2005 (Doc. #18, ex. 6). In light of the record, the Court is satisfied with this document's authenticity (Baker Dep.; Parks Dep.). *See* FED. R. EVID. 901(b)(2).

### **Parties' Testimony**

Next, in considering the parties' testimony, the Court is limited to those statements made with personal knowledge. FED. R. CIV. P. 56(e)(1). Therefore, testimony made on information and belief, or that which constitutes personal opinions, as opposed to facts, shall be automatically excluded. *See Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1367 (8th Cir. 1983) (An affiant's reliance on information and belief is insufficient to create an issue of material fact.).

### *Background and Findings*

Starting in September of 2003, Mr. Rabe occupied a temporary position at Nationwide. By January of 2004, Nationwide hired Mr. Rabe as a full-time senior accountant. From December of 2004 through at least March of 2005, Mr. Parks served as Mr. Rabe's supervisor. During that time period, Mr. Parks testified that he had no problems with Mr. Rabe's conduct or performance. Thereafter, through and until his termination in August of 2005, Mr. Rabe was supervised by Mr. McGeehan.

On August 17, 2005, Mr. Rabe informed Mr. McGeehan that his wife was scheduled to give birth on September 23, 2005, and inquired about taking two weeks of FMLA (Family and Medical Leave Act) leave for the event. Mr. Rabe alleges that Mr. McGeehan responded that (i) he would not be eligible to take leave if the company was "really busy," and (ii) he was not entitled to the same rights as his female counterparts. Based on this interaction, Mr. Rabe alleges that he was refused FMLA leave.

On Friday, August 26, 2005, Mr. Rabe was called to a meeting with Mr. McGeehan and the Ms. Baker (*supra* note 2), during which time Mr. Rabe was informed generally that he *would* be eligible for FMLA leave and was provided applicable materials and/or forms. Immediately thereafter, Mr. McGeehan provided a memo ("Exhibit 16") to Mr. Rabe, dated August 26, 2005, in which he discussed their August 17th interaction (*supra*), specifically stating, in part:

> The issue that I want to outline is not [Mr. Rabe's] desire to take time off, but the manner in which [he] approached me. Instead of talking in a professional manner, [Mr. Rabe] almost immediately put me on the defensive by challenging the time off another associate received when they had a child.
>
> This is just one example of what has become a pattern of unprofessional and unacceptable behavior that [Mr. Rabe] has been displaying in the accounting department...
> ...
> Any further incidents that do not adhere to these guidelines [or other directives] will result in a written warning and could include termination, if the offense warrants such action. ("Exhibit 16.")

Later the same day, August 26th, Mr. McGeehan assigned a filing project to Mr. Rabe, to be completed by the day's end. Mr. Rabe responded that he "would be happy to comply to the best of my ability," and later testified that he did in fact believe he would be able to complete the project as instructed. However, for reasons now in dispute, the project was not completed before the end of the day.

The following Monday, August 29, 2005, Mr. Rabe states that he was absent from work for health-related reasons. On Tuesday, August 30, 2005, Mr. Rabe was terminated. Nationwide avers that its decision to terminate was made by Mr. Parks; and the cause for termination was (i) Mr. Rabe's failure to timely complete the assigned filing task, and (ii) a "general lack of confidence in [Mr. Rabe's] ability to perform duties as directed/instructed."[FN4]

> **FN4**. While under Mr. McGeehan's supervision, Mr. McGeehan and Mr. Parks testified that they discussed three specific issues regarding Mr. Rabe's performance. First, Mr. Parks cited inaccuracies with Nationwide's cash application. Although at times Mr. Parks failed to explain how these inaccuracies were attributed to Mr. Rabe's performance, the record sufficiently confirmed that Mr. Rabe was responsible, at least in part, to confirm the accuracy of the system's results.
> The next issue raised by Mr. Parks was Mr. Rabe's "inconsistency with [the time that] he showed up." However, the importance of this purported "issue" was greatly undermined by Mr. Parks' subsequent testimony that he was not "concerned about showing up at 7:00 exactly or 7:30 or 8:00 or whatever...," and Mr. Rabe's continued employment with Nationwide notwithstanding his continually discrepant working hours. (*See* "Exhibit 9.")

5

Lastly, Mr. Parks stated his concern over Mr. Rabe's "change in personality." However, there is no evidence that this "issue" was in existence prior to Mr. Rabe's leave request, apart from inadmissible and/or equivocal testimony offered by Nationwide.

### *Mr. Rabe's FMLA Claim*

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... [b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1)(A)-(D); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006). In that way, the FMLA effectively prohibits an employer from interfering with rights by (I) impeding, restraining, or denying the exercise of, or attempt to exercise, such rights, 29 U.S.C. § 2615(a)(1); and/or (II) retaliating and/or discriminating against an employee for opposing the denial of such rights, *id*. § 2615(a)(2); *Stallings*, 447 F.3d at 1050.

In the instant case, Mr. Rabe alleges that, shortly after he informed his supervisor of his intention to take leave, Nationwide interfered with, and/or retaliated against, his exercise of rights. Specifically, it is alleged that Mr. Rabe (I) received a "write-up" ("Exhibit 16," *supra* ); (II) was improperly refused leave; and (III) was ultimately terminating. Nationwide now moves for summary judgment on both the interference and retaliation claims.

### *I. Interference Claim*

Under the FMLA, an employer is prohibited from denying, restraining, or interfering with an employee's exercise of, or attempt to exercise, any right afforded thereunder. 29 U.S.C. § 2615(a)(1). Interference claims may be based on an employer refusing to authorize FMLA leave, discouraging an employee from using such leave, and/ or avoiding the responsibilities imposed by the FMLA. *Stallings*, 447 F.3d at 1050 (citing 29 C.F.R. § 825.220(b)). *See Stallings*, 447 F.3d at 1050 (" 'When an employer attaches negative consequences to the exercise of protected rights, it has 'chilled' the employee's willingness to exercise those rights because he or she does not want to be fired or disciplined for doing so.' ").

In his petition, Mr. Rabe alleges interference in that he was refused leave and ultimately terminated. Initially, Nationwide responds that termination does not constitute interference because "termination itself is not a refusal to authorize leave or 'chilling' factor." Therefore,

Nationwide argues, Mr. Rabe's claim would be more properly stated (if at all) as one of retaliation, under Section 2615(a)(2). The Court disagrees.

The Code of Federal Regulations pertaining to the FMLA provides guidance. Thereunder, "interference" includes "manipulation by a covered employer to avoid responsibilities under [the] FMLA." 29 C.F.R. § 825.220(b). Within this framework, employers are prohibited from, by way of example, changing an employee's essential job functions, or reducing an employee's work hours, to preclude his taking of leave. *Id*. § 825.220(b)(2)-(3).

In his petition, Mr. Rabe alleges that, in refusing his leave request and later terminating him, Nationwide interfered with his attempt to exercise his FMLA rights. In viewing the record in the light most favorable to the plaintiff, Nationwide's alleged comments and/or behavior shortly following Mr. Rabe's leave request support a claim for interference. Further, it is uncontroverted that (i) on August 17, 2005, Mr. Rabe gave notice of his intent to take leave; (ii) on August 26, 2005, Mr. Rabe met with management to further discuss this inquiry; and (iii) on August 30, 2005, Mr. Rabe was terminated. Taken together, Mr. Rabe has sufficiently stated a prima face case of interference.

In so finding, the Court declines to preclude pre-emptive termination from the scope of FMLA interference claims. The Eighth Circuit recently stated that "every discharge of an employee while she is taking FMLA leave interferes with an employee's FMLA rights." *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 980 (8th Cir. 2005). Although the above language was stated in the context of a post-leave termination, this Court finds it unimaginable that Congress or the Eighth Circuit sought to afford lesser FMLA protection to employees precipitously terminated for inquiring about, or giving notice of, FMLA leave. Whether an alleged act occurs prior to, during, or subsequent to FMLA leave, that which "deters an employee from participating in protected activities constitutes an 'interference' or 'restraint' of the employee's exercise of his rights.' " *Stallings*, 447 F.3d at 1050 (quoting 29 C.F.R. § 825.220(b)).

What remains in dispute then is whether Nationwide's alleged acts and ultimate termination resulted from Mr. Rabe's inquiry about and/or notice of FMLA leave. *See*, *e.g.*, *Stallings*, 447 F.3d at 1050-51 (While every termination amounts to interference, an employer is not liable unless the dismissal was related to the FMLA leave.) (citing *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003)). Here, Nationwide bears the burden to

7

demonstrate that Mr. Rabe would have been terminated regardless of his requests and/or attempts to exercise his rights under the FMLA. *See Throneberry*, 403 F.3d at 978-79 ("As long as an employer can show a lawful reason, i.e., a reason unrelated to an employee's exercise of FMLA rights, ∴ the employer will be justified to interfere with an employee's FMLA leave rights.").

Not surprisingly, Nationwide avers that Mr. Rabe was, and would have been, terminated notwithstanding his leave inquiry. In support thereof, Nationwide cites (i) repeated warnings by management concerning Mr. Rabe's failure to complete his filings in a timely manner; (ii) Mr. Rabe's failure to complete an assigned filing task and/or notify his supervisor of the same on August 26, 2005; (iii) several errors made by Mr. Rabe in the months preceding his termination, which resulted in the misapplication of cash and improper billing; and (iv) Mr. Rabe's exhibited pattern of "unprofessional and unacceptable behavior."

For summary judgment purposes, Nationwide has failed to sufficiently establish the existence of a lawful reason unrelated to Mr. Rabe's exercise of FMLA rights. First, much of the evidence relied upon by Nationwide is controverted and/or without adequate foundation, and therefore unusable by the Court; the remaining documents largely consist of those prepared subsequent to Mr. Rabe's leave request. Next, the deposition testimony of Nationwide's management is substantially inconsistent, equivocal, and/or without foundation; and often useless to support its mis-characterized statements of "fact." Lastly, the veracity of any "performance issues" prior to Mr. Rabe's leave request has not been established. Notably, the record is absent any proper evidence which demonstrates that Mr. Rabe's employment with Nationwide was ever in jeopardy, notwithstanding his inconsistent work schedule and previous cash application inaccuracies. Further, the evidence is not summarily sufficient to prove that Mr. Rabe had been issued warnings or exhibited unprofessional behavior. In fact, Mr. Rabe received a rating of "good" on his most recent performance evaluation. *See also* note 4, *supra*. Accordingly, Mr. Rabe's interference claim survives summary judgment.

## **II. Retaliation Claim**

Next, Mr. Rabe alleges that Nationwide retaliated against him in that, shortly after he notified Mr. McGeehan of his intent to take leave, he was written up and ultimately terminated.

To state a claim for retaliation, an employee must establish that " '[he] exercised rights afforded by the Act, that [he] suffered an adverse employment action, and that there was a causal

connection between [his] exercise of rights and the adverse employment action.' " *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006) (applying the *McDonnell Douglas* burden-shifting framework to FMLA retaliation claims) (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002)); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Here, Mr. Rabe must demonstrate that, in view of all evidence in the record, Nationwide's "retaliatory motive played a part in the adverse employment action." *Hite*, 446 F.3d at 865-66 (quoting *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002)).

In his petition, Mr. Rabe alleges that, shortly after he informed Nationwide of his notice and intent to take leave, he was refused leave and ultimately terminated. Although timing alone will not establish causation; given that Mr. Rabe was terminated less than two weeks after his request, coupled with Mr. McGeehan's alleged statements and behavior following Mr. Rabe's leave inquiry; the causation element has been sufficiently established. *See Hite*, 446 F.3d at 866 (internal citations omitted) ("Even if temporal proximity alone is insufficient to establish causation, the employee may attempt to prove causation by providing evidence of the employer's discriminatory comments.")

Once a prima facie case has been established, "the burden shifts to the employer to articulate [sic] a legitimate, nondiscriminatory reason for its actions." *Hite*, 446 F.3d at 865 (citing *Smith*, 302 F.3d at 833). Here, Nationwide states that (i) the "write-up" did not constitute an adverse employment action, and (ii) Mr. Rabe's ultimate termination resulted exclusively and properly from his failure to timely complete the assigned filing task.

In the final step, the burden shifts back to the employee to demonstrate that the "employer's proffered reason is pretextual." *Hite*, 446 F.3d at 865. "[T]he employee must present evidence that '(1) creates a question of fact regarding whether [the defendant's] reason was pretextual and (2) creates a reasonable inference that [the defendant] acted in retaliation.' " *Id.* (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802-03). At this point in the analysis, courts should not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995).

In response to Nationwide's proffered reasoning, Mr. Rabe cites (i) Mr. McGeehan's alleged comments and behavior in response to his request, and (ii) the unfair and/or unrealistic circumstances under which he was expected to complete, what became, his final project. The

9

record adequately supports Mr. Rabe's position, i.e. (i) Mr. Rabe's testimony regarding Mr. McGeehan's comments following his leave request; (ii) Mr. Rabe's and Ms. Baker's testimony regarding the reasonableness of Mr. McGeehan's reaction to the request, which seemingly induced his "write-up"; and (iii) the parties' inconsistent and equivocal testimony regarding (a) the length of time required to complete the disputed assignment, (b) the imposition of additional tasks to be completed concurrently, and (c) the identity and motive of the decision-maker(s) leading up to Mr. Rabe's termination.

In light of the record, Nationwide's justifications are not worthy of credence. *See*, *e.g.*, *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006) (quoting *Smith*, 302 F.3d at 834); *Hite*, 446 F.3d at 867 (Employee may prove pretext by showing that employer's explanation has no basis in fact) (citing *Logan v. Liberty Healthcare Corp.,* 416 F.3d 877, 881 (8th Cir. 2005)); *Stallings*, 447 F.3d at 1052 (Even where employee concedes that the proffered reason for the termination would have been a sufficient basis, employee may go forward on his retaliation claim where there is sufficient evidence of another "true motivating explanation.") (internal citations omitted).

Thereupon, Mr. Rabe's retaliation claim survives summary judgment. *See Stallings*, 447 F.3d at 1052-53.

Accordingly, Nationwide's motion for summary judgment (Doc. #14) is **HEREBY DENIED** in its entirety.

Dated this 10th day of January, 2008.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**